UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| RONALD LEE NEELS,<br><br>                    Petitioner,<br><br>        vs.<br><br>BRENT FLUKE, WARDEN, MIKE<br>DURFEE STATE PRISON;<br><br>                    Respondent. | 4:22-CV-04053-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is pending before the court pursuant to the *pro se* petition under 28 U.S.C. § 2254 of Ronald Lee Neels, a person incarcerated by a judgment of a South Dakota state court.  See Docket No. 1.  Pending is respondents' motion for judgment on the pleadings seeking to dismiss Mr. Neels' petition without holding an evidentiary hearing.  See Docket No. 22. Mr. Neels opposes the motion.  See Docket Nos. 30, 31 & 31-1.  This matter has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 57.11.

## FACTS

### A.    Proceedings Before the State Trial Court

### 1.    Pretrial

After T.N., Mr. Neels' adopted daughter, made disclosures at the age of 22 that she had been sexually abused by Mr. Neels when she was a child

starting at age 9 or 10, the state investigated Mr. Neels related to

that disclosure.

Sergeant Mike Walsh interviewed Mr. Neels regarding T.N.'s allegations

on October 24, 2014.  The interview was video and audio recorded.  During this

interview, Mr. Neels admitted committing several sexual acts with T.N. from the

time T.N. was 14 until a couple of months prior to the interview.  Some of these

admissions included digital genital penetration, oral sex, and intercourse.

The state first charged Mr. Neels with 16 counts of sex-related charges

including first- and third-degree rape, aggravated incest, incest, and sexual

contact with a child under the age of 16.  State v. Neels, CRI 14-6754

(hereinafter "CR") at pp. 27-31.  The state dismissed the two first-degree rape

charges before trial, leaving 14 counts.  Id. at p. 77.

**2.    Jury Trial**

Mr. Neels availed himself of his right to a jury trial.  During opening

statements, the prosecutor asked the jury to "imagine a world where you're a

little girl without a dad."  CR at p. 1034 (JT Day 2 at p. 17).  The prosecutor

then described the sexual abuse T.N. told law enforcement she had suffered at

Mr. Neels' hands, all the while inviting the jury to imagine themselves as T.N.

Id. at pp. 1034-36 (JT Day 2 at pp. 17-19).  Mr. Neels' counsel did not object to

the prosecutor's statements during opening statements.  Id.

During closing arguments at the end of the trial, when the prosecutor

began again in the same vein, inviting the jury to stand in T.N.'s shoes, defense

counsel promptly objected, stating, "I think it's improper to ask the jury to put

themselves in the position of the victim." CR at p. 550 (JT Day 4 at p. 64). It can be inferred that the court sustained the objection in closing arguments because the prosecutor immediately changed her argument. Id. at pp. 550-51 (JT Day 4 at pp. 64-65).

The state called T.N. as its first witness. Id. at 1042 (JT Day 2 at p. 25). She testified that Mr. Neels came into her life when she was about two years old and adopted her. Id. at p. 1045 (JT Day 2 at p. 28). She grew up with her biological mother and Mr. Neels on a rural farm where they had animals. Id. at p. 1046 (JT Day 2 at p. 29). Her relationship with Mr. Neels was normal when she was little. Id.

When T.N. was nine that relationship started to change. Id. at p. 1047 (JT Day 2 at p. 30). Mr. Neels began telling T.N. she was beautiful and hugging and kissing her. Id. After having his first back surgery in 2000, Mr. Neels asked T.N. to help him in the shower. Id. at 1047 & 1117 (JT Day 2 at p. 30 & 100). He asked T.N. to wash his private parts. Id. at p. 1048 (JT Day 2 at p. 31). T.N. estimated this happened when she was nine or 10. Id.

When T.N. grew pubic hair in the fifth grade, Mr. Neels placed her on the couch one day and removed her underwear and shorts and trimmed T.N.'s pubic hair, explaining to her that she needed to keep this area trimmed up. Id. at p. 1051 (JT Day 2 at p. 34). Mr. Neels was not wearing any clothes at the time. Id. After trimming T.N.'s hair, Mr. Neels performed oral sex on her vagina. Id. at p. 1052 (JT Day 2 at p. 35). T.N. testified she was 10 or 11 years old when this happened. Id. at p. 1108 (JT Day 2 at p. 91).

When T.N. was 12, Mr. Neels came to her bedroom and touched her bare breasts and placed two fingers inside her vagina.  Id. at pp. 1053-55 (JT Day 2 at pp. 36-38).  Mr. Neels told T.N. not to tell anyone about what happened or she would get in trouble.  Id. at pp. 1055-56 (JT Day 2 at pp. 38-39).

T.N. testified that another time when she was 12 or 13 Mr. Neels put his penis all the way inside her vagina when the two of them were in the garage.  Id. at pp. 1056-57, 1065, 1083-85 (JT Day 2 at pp. 39-40, 48, 66-68).  This occurred on top of the hood of a green Craftsman lawnmower.  Id.

After the incident on the lawnmower, Mr. Neels began initiating more sexual activity in the shower, eventually telling T.N. to get in the shower with him with her clothes removed.  Id. at pp. 1067-68 (JT Day 2 at pp. 50-51).  She would wash him and then he would wash her, touching her all over.  Id.  Mr. Neels made T.N. give him oral sex in the shower.  Id. at pp. 1069 (JT Day 2 at p. 52).  This occurred multiple times.  Id.  T.N. was 12 or 13 when this was happening.  Id.; CR at p. 607 (JT Day 3 at p. 15).

Another time Mr. Neels made T.N. give him oral sex when the two of them were in the goat barn.  CR at pp. 1075-77 (JT Day 2 at pp. 58-60).  Another time Mr. Neels had vaginal intercourse with T.N. in the horse barn.  Id. at pp. 1087-89 (JT Day 2 at pp. 70-72).  T.N. testified sexual events happened multiple times in the outbuildings on the farm where she and Mr. Neels lived.  Id. at p. 1089 (JT Day 2 at p. 72).

T.N. testified Mr. Neels bought a semi-truck and trailer when she was nine years old and she used to ride in his truck with him.  Id. at pp. 1092-93

4

(JT Day 2 at pp. 75-76). Mr. Neels touched her and had intercourse with her in his truck at a truck stop on 12th Street in Sioux Falls. Id. at pp. 1093-94 (JT Day 2 at pp. 76-77). The sexual events in Mr. Neels' semi-truck happened when T.N. was around 16. Id. at 1094 (JT Day 2 at p. 77).

When T.N. was in high school between the ages of 16 and 18 Mr. Neels had intercourse with her on the dining room table of their home, resulting in the table being broken. Id. at p. 1103 (JT Day 2 at p. 86). Another time when T.N. was in high school Mr. Neels had intercourse with T.N. on the bathroom sink in their home and broke the corner off of the vanity while doing so. Id. at pp. 1106-08 (JT Day 2 at pp. 89-91).

Mr. Neels had a second back surgery in July 2007. Id. at p. 1117 (JT Day 2 at p. 100). After that surgery, he again made T.N. wash him and made her give him oral sex in the shower. Id. at pp. 1117-18 (JT Day 2 at pp. 100-01).

T.N. was isolated from other kids her age on the farm and Mr. Neels made her stay on the farm to help with chores. Id. at 1109 (JT day 2 at p. 92). She thought the relationship she had with Mr. Neels was normal until she turned 17 years old. Id. Mr. Neels told her all fathers did this with their daughters and this was how they show their daughters that they love them. Id.

Between the ages of 18 and 22 Mr. Neels continued having sex with T.N. Id. at pp. 1121-22 (JT Day 2, Part 2 at pp. 4-5). These later incidents happened mostly in Mr. Neels' semi-truck, numerous times at the same truck

stop in Sioux Falls on 12th Street.  Id. at pp. 1121-22, 1186 (JT Day 2, Part 2 at pp. 4-5, 69).

T.N. stated she wanted the molestation to stop, but whenever she would try, Mr. Neels would get mad and yell at her; one time when T.N. was over the age of 18 he tried suffocating her with a pillow.  Id. at pp. 1123-25 (JT Day 2, Part 2 at pp. 6-8).  When Mr. Neels finally lifted the pillow from T.N.'s face he asked, "how did that feel?"  Id.

Another time, again when T.N. was an adult, he confronted her, backed her into a corner on the screened-in porch, and then punched a hole through the screen with his fist right next to T.N.'s head.  Id. at pp. 1125-26 (JT Day 2, Part 2 at pp. 8-9).  Another time, when T.N. was dating someone, Mr. Neels grabbed her head between his hands and squished her head, and asked if her boyfriend would come save her in time.  Id. at p. 1127 (JT Day 2, Part 2 at p. 10).  Another time he went to where T.N. was sleeping and began banging on the outside wall of the house outside T.N.'s bedroom where she was in bed with a boy.  Id. at pp. 1130-31 (JT Day 2 at pp. 13-14).  Mr. Neels came into the house and called her a slut and a whore, told her he did not love her any more and that he was no longer her dad.  Id.

T.N.'s mother, Monica, testified for the prosecution.  Id. at p. 666 (JT Day 3 at p. 74).  She stated that T.N. was nine years old when Mr. Neels had his first back surgery.  Id. at p. 676 (JT Day 3 at p. 84).  Mr. Neels told Monica that T.N. had helped him with showering, but that he made sure she did not see his genitals.  Id. at p. 675 (JT Day 3 at p. 83).  T.N. was 14 or 15 when Mr. Neels

6

had his second back surgery.  Id. at p. 676 (JT Day 3 at p. 84).  Monica testified that before Mr. Neels' first back surgery in 2000, she and he had a normal sexual relationship, but that after 2000 it became "pretty nonexistant." Id. at p. 677 (JT Day 3 at p. 85).

Monica had two other daughters, one that was older than T.N. and one that was younger that was Mr. Neels' biological daughter.  Id. at 678 (JT Day 3 at p. 86).  Monica testified Mr. Neels' relationship with these other two daughters was normal.  Id.  But Monica testified Mr. Neels was much stricter with T.N.:  he did not like her to spend time with other friends, male or female; he wanted to know where she went; what she did; and took issue with what she wore.  Id. at pp. 679-80 (JT Day 3 at pp. 87-88).  Mr. Neels was especially strict regarding T.N.'s dating.  Id. at pp. 680-81 (JT Day 3 at pp. 88-89).  He would do things like go onto Google Earth and "scope out the landscape" and warn T.N. that the boy could rape her or "have his way with her" at various locations on the map.  Id.

Monica testified that Mr. Neels regularly took T.N. with him on trucking trips, but did not do the same with her other two daughters.  Id. at p. 681 (JT Day 3 at p. 89).  Even when T.N. became an adult, and even when she no longer lived at home, Mr. Neels always wanted to know where she was and what she was doing.  Id. at p. 682 (JT Day 3 at p. 90).  The last five years the relationship between Mr. Neels and T.N. was tempestuous and they were always fighting.  Id.  When T.N. moved in with a boy Mr. Neels told her she should not do that, she should not give her virginity away to a man she did not

know, that she would be living in sin and that God would hold it against her. Id. at p. 684 (JT day 3 at p. 92).  Mr. Neels never made statements like this to Monica's two other daughters.  Id.

During the last five years, the relationship between Mr. Neels and T.N. was "explosive." Id. at p. 685 (JT Day 3 at p. 93).  One time Monica awoke in the middle of the night and heard the two arguing down in T.N.'s bedroom or in the kitchen.  Id.  Monica attempted to intervene and Mr. Neels called her a b---h and told her it was not any of her concern.  Id.  During one of these arguments Monica witnessed Mr. Neels holding T.N.'s head on either side with his hands and squeezing, telling her that if he wanted to, he could squeeze her head until her brains popped out.  Id. at p. 686 (JT Day 3 at p. 94).  He then taunted T.N. and asked why she didn't call her boyfriend over.  Id.  Mr. Neels said he would then kill the boyfriend in front of T.N. and make her watch and kill T.N. later.  Id.  Monica witnessed this conversation shortly before March 2014.  Id.

Monica testified she and T.N. were very close when T.N. was little because it was just the two of them.  Id. at p. 687 (JT Day 3 at p. 95).  When T.N. turned nine, she started to become distant and quiet.  Id.  When T.N. became an adult, she was always angry and very upset, really hurt.  Id.

Monica testified about five years previous their dining room table suddenly collapsed when she overturned a soap mold on it.  Id. at p. 690 (JT Day 3 at p. 98).  Another time Monica noticed the corner of the vanity in their bathroom had broken off, and Ron explained it by saying he hit the corner with

the shower head and it broke.  Id. at p. 691-92 (JT Day 3 at pp. 99-100).

Another time, a five-inch hole appeared in a door on the first floor of their home

right at eye level at a time when T.N. had just paid a visit to their home.  Id. at

pp. 692-93 (JT Day 3 at pp. 100-01).

Sergeant Mike Walsh with the Minnehaha County Sheriff's Office

testified.  Id. at p. 754 (JT Day 3 at p. 162).  He stated he interviewed Mr. Neels

on October 24, 2014, for around three hours.  Id. at pp. 755, 758 (JT Day 3 at

pp. 163, 166).  A redacted version of the video recording of that interview was

played for the jury.  Id. at p. 760 (JT Day 3 at p. 168).  A two-hour and 55-

minute video interview was provided to this court by the state courts for review

and this court has viewed the entire interview.[1]

Mr. Neels was very alert during the interview.  At one point, he embarked

on a story and interrupted himself to ask Sergent Walsh, "you can't use what I

say against me, right?  You can't use what I say to charge me with a crime?"

Video at 49:43.  Sergeant Walsh reminded Mr. Neels of the rights he had

advised him of at the beginning of the interview.  Sergeant Walsh told Mr. Neels

he would be able to use anything Mr. Neels said.  Id. at 49:54.  He then

reminded Mr. Neels that he was in charge of what he wanted to say.  After that

reminder of his rights, Mr. Neels told Sergeant Walsh he would "leave that part

out then."  Id. at 50:02.

---

[1] The redacted version of the interview played for the jury was approximately
two hours.  Sergeant Walsh testified the entire interview was approximately
three hours.  From these two indicia, this court infers that the recording
provided to this court was the entire unredacted interview.

Mr. Neels told Sergeant Walsh that T.N. was an inveterate liar. He characterized her as angry with Mr. Neels because T.N. was involved in "boozing and boys" and did not like Mr. Neels holding her to account for her actions. For the first hour and 31 minutes of the interview Mr. Neels denied that anything improper or of a sexual nature had ever occurred between him and T.N. Then he began to admit certain incidents, but minimized his conduct by asserting that T.N. was an adult or at least 16 years old when the events happened. Id. at 1:31:40. Later on in the interview, he admitted to sexual conduct that occurred as early as age 14. Id. at 2:04:00.

He first admitted "it" started to happen when T.N. was 16 when Mr. Neels had his second back surgery in 2007. Id. at 1:31:45. Mr. Neels explained he stayed at his mother's house for a month after this surgery, so the activity with T.N. began to happen after that. Id. at 1:36:00. He estimated three to four sexual encounters occurred during the nine months after the surgery. Id. at 1:41:10. Mr. Neels stated to Sergeant Walsh he told T.N. that if they had met under different circumstances in a different time he would have married her "in a heartbeat." Id. at 1:41:45.

Mr. Neels said the first time he had full intercourse with T.N. was when she was 18 in his semi-truck. Id. at 1:45:29. Mr. Neels said the first time he gave T.N. oral sex was when T.N. was in high school. Id. at 1:46:26. Mr. Neels said the first time T.N. gave him oral sex was when T.N. was in high school and was older than 16. Id. 1:47:01.

10

Mr. Neels stated the first time he touched T.N.'s genitals with his fingers was when T.N. hit puberty at age 14 or 15. Id. at 1:48:03. Later he admitted that T.N. hit puberty at age 12. Id. at 2:17:01. Mr. Neels explained he was telling and showing T.N. that she needed to keep herself groomed in her pubic area. Id. at 1:48:45. Later Mr. Neels stated it was on this same occasion that he first gave T.N. oral sex. Id. at 2:02:45.

Mr. Neels stated he took T.N. on a practice date to show her how a boy she goes on a date with should treat her. Id. at 1:52:09. He told her to never kiss on a first date and not to sleep with a man until they were married. Id. at 1:52:52. He described a time when T.N. was with him in his semi-truck and exposed her breasts to him and rubbed them on either side of his head while he was driving. Id. at 1:54:15.

Mr. Neels stated T.N. wanted to wash his genitals in the shower and he allowed her to do so after his second surgery. Id. at 2:06:46. Then he said he reciprocated by washing her. Id. at 2:07:50. Mr. Neels was adamant that he never forced or threatened T.N. to have sex. Id. at 2:08:45. Mr. Neels admitted he once owned a green Craftsman lawnmower, but denied T.N.'s account that the two had had sex on the lawnmower. Id. at 2:09:20. Mr. Neels said it was possible an encounter had occurred on a hay bale in an outbuilding. Id. at 2:10:38.

Mr. Neels admitted that prior to T.N. turning 16, he probably had oral sex or touching of genitals three or four times. Id. at 2:11:28. After T.N. turned 16 and before she was 18, he stated they probably had oral sex or

touching of genitals three or four times.  Id. at 2:12:15.  He also admitted a couple of times T.N. crawled into bed with him and laid on top of him.  Id. at 2:13:22.  Mr. Neels told Sergeant Walsh that his feelings for T.N. were not lust, or perversion, but love.  Id. at 2:25:01.  He said his pet name for T.N. was "satin butterfly."  Id. at 2:27:55.  Mr. Neels told Sergeant Walsh he once told T.N. he would like her to give birth to his son.  Id. at 2:33:25.  Mr. Neels said that T.N. told him she wanted to marry him.  Id. at 2:35:31.

Following the playing of the video recording, Sergeant Walsh established that Mr. Neels was born in 1962, making him 53 at the time of trial.  Id. at p. 513 (JT Day 4 at p. 27).  Sergeant Walsh then summarized some highlights of his interview with Mr. Neels.  Mr. Neels made clear during the interview that his definition of "virginity" meant that T.N. was a virgin so long as the only person she had sex with was him.  Id.

The defense called only one witness to testify—Mr. Neels' sister, Rhonda.  Id. at p. 532 (JT Day 3 at p. 46).  Rhonda testified she spoke to her niece, T.N., shortly after T.N. made her initial disclosures about the abuse at Mr. Neels' hands in October 2014.  Id. at p. 533 (JT Day 4 at p. 47).  At that time, T.N. told Rhonda that the molestation began when she was age 14.  Id.

At the conclusion of the trial, the state trial court instructed the jury that it must consider each count and the evidence applicable to each count separately.  Docket No. 23-23 at p. 3.  The court instructed that the "fact that [the jury] may find the defendant guilty or not guilty on any one count of the indictment must not control or influence [the jury's] verdict on any other count

12

of the indictment." Id.  The court further instructed the jury that "[i]n order to return a verdict, all jurors must agree."  Id. at p. 4.  However, defense counsel did not propose and the court did not give a specific unanimity instruction about the multiple instances of sexual abuse T.N. testified about and how the jury was to consider that evidence during its deliberations.  CR at pp. 487-502 (JT Day 4 at pp. 1-16).

The jury found Mr. Neels guilty on all 14 counts.  CR at pp. 153-156. The trial court sentenced Mr. Neels to 75 years in prison.[2]  Docket No. 23-1.

## B.    Direct Appeal to the South Dakota Supreme Court

Mr. Neels appealed his conviction and sentence, raising the following issues on appeal:

1.    Whether Neels' Due Process right to jury unanimity was denied by duplicity in the indictment.

2.    Whether the prosecutor's arguments during voir dire and opening statement were improper and denied Neels a fair trial.

3.    Whether the court erred in admitting testimony of non-sexual violence perpetrated by Neels against T.N.

4.    Whether the cumulative errors by the trial court and misconduct by the prosecutor denied Neels his constitutional right to a fair trial.

---

[2] Mr. Neels was sentenced to 12 years' imprisonment on each of counts 1-4 to be served concurrently with each other; 12 years' imprisonment on each of counts 5-6 to be served concurrently with each other but consecutive to counts 1-4; five years' imprisonment each on counts 7-8 to be served concurrent to each other but consecutive to counts 1-4; 12 years' imprisonment on each of counts 9-10 to be served concurrently with each other but consecutive to counts 1-4; 12 years' imprisonment to be served consecutively; five years' imprisonment on count 13 to be served consecutively; and five years' imprisonment on count 14 to be served consecutively.  Docket No. 23-1.

Docket No. 23-3 at pp. 5-6.[3]

As to the first issue, Mr. Neels argued that counts 7 through 12 of the indictment were duplicitous because they charged multiple offenses in a single count. Docket No. 23-3 at pp. 13-15. Mr. Neels argued the prosecution offered a number of possible acts to support each count. Id. at p. 16. Therefore, different jurors might have seized on different acts to support a particular conviction, thereby eluding the necessity that jurors be unanimous. Id. at p. 17. Mr. Neels argued the trial court should have instructed the jury that in deciding whether Mr. Neels was guilty on a particular count, the jury must unanimously agree on the distinct act committed by Mr. Neels in support of that count. Id. Mr. Neels' brief implicitly admitted this error should be reviewed only for plain error. Id. at pp. 19-20.

As to the second issue raised on appeal, Mr. Neels openly conceded the issue must be reviewed under the "plain error" standard. Id. at p. 21. Plain error under South Dakota law requires a showing of (1) an error (2) that is plain (3) which affected a substantial right and (4) "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. at p. 21 (quoting State v. Hayes, 855 N.W.2d 668, 675 (S.D. 2014)).

---

[3] This court cites to the page numbers imprinted on the pages by this court's electronic docketing system, CM/ECF. The page numbers which originally appeared on Mr. Neel's appellate brief differ from those CM/ECF numbers because the first three pages of Mr. Neels' brief are numbered i through iii, with page number 1 of the brief appearing on CM/ECF page number 4. The CM/ECF system numbered the first page of the document "1" and continued sequentially thereafter.

As for the third issue, an evidentiary issue, Mr. Neels' trial counsel had filed a motion *in limine* to exclude the other acts evidence of non-sexual violence, but the trial court denied the motion.  Id. at pp. 28-29.  Mr. Neels asserted this issue should be reviewed for abuse of discretion.  Id. at p. 29.  No standard of review was acknowledged by Mr. Neels in his brief on the fourth issue.  Id. At p. 31.

The South Dakota Supreme Court summarily affirmed in a one-page opinion stating the following in its entirety:

> The Court considered all of the briefs filed in the above-entitled matter, and in light of the record in this case, Neels has not met his burden that the state's improper opening statement so infected his trial that his conviction violates due process.  The Court concludes pursuant to SDCL 15-26A-87.1(A), that it is manifest on the face of the briefs and the record that the appeal is without merit on the following grounds:  1. that the issues on appeal are clearly controlled by settled South Dakota law or federal law binding upon the states, 2. that the issues on appeal are factual and there clearly is sufficient evidence to support the verdict, and 3. that the issues on appeal are ones of judicial discretion (SDCL 15-26A-87.1(A)(1), (2) and (3)), now, therefore, it is
> ORDERED that a judgment affirming the Judgment of the circuit court be entered forthwith.

Docket No. 23-6.  The court's decision was issued January 17, 2017.  Id.

## C.    State Habeas Proceedings

### 1.    Proceedings in Circuit Court

On May 23, 2017, Mr. Neels filed with the state habeas court a *pro se* petition for a writ of habeas corpus dated May 17, 2017.  Docket No. 23-7.  Habeas counsel was appointed for Mr. Neels and an amended petition was filed

June 7, 2018, on Mr. Neels' behalf. Docket No. 23-8. That amended petition

raised the following claims:

1.  Trial counsel were ineffective because they failed to object to the prosecutor's statements in voir dire and opening statement. Appellate counsel was presented with a more onerous standard of review on appeal because trial counsel failed to object.

2.  Trial counsel was ineffective for failing to request a unanimity instruction. Because of trial counsel's failure, Mr. Neels was prejudiced because the jury was allowed to convict him without unanimous agreement as to whether a particular act was committed. Because of trial counsel's failure, appellate counsel had a more onerous burden to demonstrate grounds for reversal on appeal.

Docket No. 23-8 at p. 3, ¶¶ 17-23.

On October 17, 2019, the state habeas court granted respondent

summary judgment on Mr. Neels' claims. Docket No. 23-16. On the record at

the hearing on respondent's summary judgment motion, the court stated it was

***not*** denying Mr. Neels' petition on the merits. Neels v. Dooley, CIV. 17-1655 at

p. 192 (Hearing Transcript "HT" at p. 50). Rather, the court held that *res*

*judicata* barred consideration of Mr. Neels' habeas claims. Id.

The court reasoned that because the showing of prejudice Mr. Neels

would have had to have made under plain error review on direct appeal is the

same showing of prejudice Mr. Neels would have to make to show prejudice as

a result of counsel's alleged ineffectiveness, in essence the prejudice issue had

been decided in the direct appeal. Id. Therefore, if the appellate court found

no prejudice under plain error review during Mr. Neels' direct appeal, the issue

of prejudice for ineffective assistance of counsel was already litigated and

16

decided adversely to Mr. Neels.  Id.  The state habeas court held Mr. Neels

should not be allowed to relitigate the same issue in his habeas petition.  Id.

Mr. Neels sought a certificate of probable cause from the state habeas

court on three issues.  Docket 23-17.  The state habeas court granted the

certificate as to two issues:  (1) whether a finding of no plain error in this case

precludes a subsequent assertion of prejudice as a result of trial counsel's

alleged ineffectiveness and (2) whether there were genuine issues of material

fact preventing the entry of summary judgment in Mr. Neels' habeas case.

Docket No. 23-18.

### 2.    Proceedings Before the South Dakota Supreme Court

The South Dakota Supreme Court issued a decision January 19, 2022,

affirming the state circuit court's habeas decision.  Neels v. Dooley, 969 N.W.2d

729, 731 (S.D. 2022).  The court noted that in his direct appeal, Mr. Neels had

raised the same issues that he had raised in his state habeas petition:  (1) that

the prosecutor's improper remarks during opening statement deprived him of a

fair trial and (2) that the trial court's instructions had allowed the jury to

convict him without reaching unanimity as to which acts had been committed

for specific counts of the indictment.  Id. at 732.  The court noted that, because

trial counsel had not objected on either of these issues at the trial court level,

the appellate court reviewed those issues on direct appeal under the plain error

standard.  Id.

The court first held that the prejudice required to be shown under plain

error review is the same prejudice that a habeas petitioner must show to

sustain a claim of ineffective assistance of counsel.  Id. at 735-36.  The court held that even though the showing of prejudice is the same under both standards, *res judicata* would apply to bar a subsequent habeas claim only where the direct appeal was denied *because* the defendant failed to show prejudice.  Id. at 736-37.  If the direct appeal was denied because the defendant failed to establish one of the other four elements of plain error, that would not necessarily bar a subsequent ineffective assistance of counsel claim premised on the same error.  Id.

Next the court examined its summary affirmance in Mr. Neels' direct appeal to determine whether the court must have premised its affirmance on a finding that Mr. Neels failed to show prejudice.  Id. at 737.  Regarding the prosecutor's remark in the opening statement, the court readily found that it's prior holding included a conclusion that Mr. Neels had not shown prejudice.  Id. (emphasizing the language from the prior opinion that Mr. Neels had not shown that the statement "so infected his trial that his conviction violates due process.").

As for the lack of a unanimity instruction, the court concluded its prior opinion necessarily found either no error or no prejudice.  Id. at 738.  Because the summary affirmance decided there was no prejudice shown under the plain error standard, the court held the doctrine of *res judicata*—specifically the issue preclusion prong of that doctrine—prohibited Mr. Neels from relitigating these issues in his habeas petition.  Id. at 738-39.  Accordingly, the court affirmed the state circuit court's denial of habeas relief.  Id. at 739.

**D.      Mr. Neels' Federal § 2254 Petition**

Mr. Neels timely[4] filed his federal habeas petition in this court under

§ 2254.  Docket No. 1.  In that petition, Mr. Neels raises the following four

grounds for relief:

1.      Mr. Neels alleges he was denied his medications for his
        disabilities in violation of his Fifth, Sixth, and Fourteenth
        Amendment rights.  Specifically he claims he suffers from
        narcolepsy and was denied access to his medication for this
        condition.  He also claims he was unknowingly taking
        antidepressants, which he claims further exacerbated his
        lack of alertness.

2.      Mr. Neels claims his Sixth and Fourteenth Amendment
        rights were violated when his trial counsel failed to object to
        the prosecutor's improper remarks during opening
        statements.

3.      Mr. Neels asserts his Fifth, Sixth, and Fourteenth
        Amendment rights were violated when the trial court failed
        to properly instruct the jury on unanimity.

4.      Mr. Neels asserts the state courts erred in concluding his
        habeas claims were barred by *res judicata*.

Docket No. 1 at pp. 5-10

---

[4] There is a one-year statute of limitations for filing a § 2254 case which began
to run in Mr. Neels' case on April 17, 2017, 90 days after the direct appeal
decision was issued on January 17, 2017.  See 28 U.S.C. § 2244(d)(1)(A); Jihad
v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001) (finality includes the 90-day period
allowed for filing a petition for a writ of certiorari before the Supreme Court,
whether a petition is filed or not).  The filing of a state habeas petition on May
23, 2017, tolled the running of that limitations period until the final decision
on the habeas petition was issued on January 19, 2022.  See 28 U.S.C.
§ 2244(d)(2).  Mr. Neels filed his petition herein on April 21, 2022.  At that
point, Mr. Neels had approximately eight months of his § 2254 limitations
period remaining—he had only used approximately four months of the period.

Respondent now moves for judgment on the pleadings, asking this court to dismiss Mr. Neels' petition without holding an evidentiary hearing.  See Docket No. 22.  Mr. Neels resists the motion.  See Docket Nos. 30, 31 & 31-1.

**DISCUSSION**

**A.    Scope of a § 2254 Petition**

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Anti-Terrorism and Effective Death Penalty Act (AEDPA) constrains federal courts to exercise only a "limited and deferential review of underlying state court decisions."  Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005).  A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06, (2000).  "A federal habeas court may not issue the writ simply because [it] concludes . . . the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.  "Rather, that application must also be *unreasonable*."  Id. (emphasis added).

The state court's factual findings "are presumed to be correct," and a "federal habeas court 'may not disregard the presumption unless' " specific statutory exceptions are met.  Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998) (quoting Thompson v. Keohane, 516 U.S. 99, 110 (1995)); 28 U.S.C. § 2254(e).  A federal habeas court must "more than simply disagree with the state court before rejecting its factual determinations.  Instead, it must conclude that the state court's findings lacked even 'fair support' in the record."  Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

## B.    Judgment on the Pleadings Standard

This court recently addressed the proper standard applicable to motions for judgment on the pleadings under FED. R. CIV. P. 12(c):

> Courts deciding a Rule 12(c) motion are required to accept as true the well-pled allegations and must resolve all inferences in the non-moving parties' favor.  Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006).  However, this tenet does not apply to legal conclusions, "formulaic recitation of the elements of a cause of action," or factual assertions which are so indeterminate as to require further factual enhancement.  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). . . . When considering a motion for judgment on the pleadings, a court generally must ignore all materials outside the pleadings.  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).  However, courts may consider "some materials that are part of the public record or do not contradict the complaint . . . as well as materials that are necessarily embraced by the pleadings."  Id.

Union Ins. Co. v. Scholz, 473 F. Supp. 3d 978, 982 (D.S.D. 2020).  The main difference between a motion to dismiss under Rule 12(b)(6) asserting plaintiff has failed to state a claim and a motion under Rule 12(c) is timing:  a Rule 12(b)(6) motion must be made before an answer is filed while a Rule 12(c) motion can be made "after the pleadings have closed."  Id. at 981.

21

In addition to the pleadings, this court has taken judicial notice of the underlying criminal, direct appeal and habeas files in South Dakota state court concerning Mr. Neels.  See Cullen v. Pinholster, 563 U.S. 170, 181-82 (2011) (finding review under § 2254(d)(1) requires review of the state-court record).

## C.    Whether Mr. Neels' Claim 1 Is Procedurally Defaulted

Respondent argues that Mr. Neels did not properly exhaust his claim set forth as ground 1 in his petition and that it is now procedurally defaulted. Docket No. 25 at p. 17.  Because Mr. Neels has not shown either (1) cause and prejudice or (2) a fundamental miscarriage of justice, respondent argues his default cannot be excused and this court must dismiss that claim with prejudice.  Id.  Mr. Neels' claim 1 alleges he was unconstitutionally deprived of medications for various conditions.  Docket No. 1 at pp. 5 & 16.  In his brief in opposition to respondent's motion herein, he expands this claim to include an assertion that his confession was involuntary because he was deprived of his medication in his interview with Sergeant Walsh.  Docket No. 30 at p. 24.[5]

Mr. Neels did include a similar claim about deprivation of medications at trial in his *pro se* state habeas petition (see Docket No. 23-7 at pp. 2-3), and that claim was abandoned in Mr. Neels' subsequent amended petition.  See Docket No. 23-8 at p. 3.  The claim was not included in his motion for a certificate of probable cause, nor in the state habeas court's grant of such a

---

[5] He claims the redactions from the video recording showed times when he fell asleep during the interview due to his narcolepsy.  Id.  The court has watched the entire unredacted video recording of the Walsh interview and never observed Mr. Neels to fall asleep during the interview.  This claim is factually without merit.

certificate.  See Docket Nos. 23-17 and 23-18.  Therefore, his claim that he was unconstitutionally deprived of his medications was never presented to the state habeas court for decision nor to the state supreme court for review.  He never raised an argument that his confession was involuntary because he did not have his medications.[6]

State prisoners who present habeas claims in federal court are required to first exhaust those claims in state court by presenting them to the appropriate court in the appropriate way and then following all avenues for appeal prescribed by state law.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (a § 2254 petitioner must exhaust his claims by first presenting those claims in state court and pursuing all prescribed avenues for appeal).  Here, Mr. Neels could have chosen to present these claims in his direct appeal or in his habeas action.  He did neither.

When a claim is presented in a federal habeas petition that is not exhausted because it has not been presented to state courts and appealed through the state's hierarchy of courts, normally the proper course of action for the federal court is to dismiss the claim without prejudice to allow the prisoner to go back to state court and present his claims to fulfill his duty to exhaust. Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998).

---

[6] Actually, he did have at least one prescription medication in his jeans pocket during the interview with Sergeant Walsh.  At the end of the interview, Sergeant Walsh pat-searched Mr. Neels and removed all items from his pockets.  One prescription bottle of pills was in Mr. Neels' pocket.

However, when it is no longer possible for the state prisoner to return to state court and exhaust—i.e., there are no nonfutile avenues left for him to exhaust his claims—the claim is considered to be procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 731-32, 735 n.1 (1991). Here, Mr. Neels' claim that he was unconstitutionally denied his medication is procedurally defaulted.

The normal way for Mr. Neels to have exhausted this claim would have been for him to raise it as an issue in his direct appeal or to raise it in his state habeas action. The direct appeal is over and cannot be reopened.

Neither can Mr. Neels file another habeas petition in state court. Under South Dakota state law, second and successive habeas petitions are not allowed unless:

> (1) The applicant identifies newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty of the underlying offense; or

> (2) The application raises a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court and the South Dakota Supreme Court, that was previously unavailable. The grant or denial of an authorization by the circuit court to file a second or subsequent application shall not be appealable.

See SDCL § 21-27-51. Mr. Neels' claim that he was unconstitutionally denied his medications does not fit into either of the above exceptions for filing a second or successive habeas petition in South Dakota state court. Mr. Neels did not identify new evidence so his claim cannot be premised on the first exception. He was aware of the trial claim as he raised this issue in his first

*pro se* petition and then abandoned that claim in his amended petition.
Compare Docket No. 23-7 at pp. 2-4, with Docket No. 23-8 at p. 3. Also, there
is no new rule of constitutional law he relies upon, so paragraph two does not
apply. His claim can no longer be exhausted in state court, so it is
procedurally defaulted. Coleman, 501 U.S. at 731-32, 735 n.1.

When a state court prisoner presents a procedurally defaulted claim in a
federal habeas petition, the federal court may not reach the merits of that claim
unless (1) the prisoner shows cause and prejudice excusing the default or
(2) the prisoner demonstrates a fundamental miscarriage of justice has
occurred by presenting new evidence showing he is actually innocent. Id. at
750. It is the petitioner's burden to demonstrate one of these two options. Id.

Here, Mr. Neels addresses the merits of his claim in his response in
opposition and agreed that it would be futile to send this claim back to state
court as he can no longer exhaust. Docket No. 30 at pp. 24-25. Mr. Neels
states that his state habeas counsel abandoned this claim against his wishes
when the amended habeas petition was filed. Id. at p. 25. He argues this
constitutes cause and fits within an exception to the procedural default rule
established in Brown v. Allen, 344 U.S. 443, 485-87 (1953).[7] Docket No. 30 at

---

[7] The Brown decision predates the enactment of AEDPA in 1996, so its
continuing validity is not apparent. The Supreme Court itself criticized Brown
in Townsend v. Sain, 372 U.S. 293, 309-11 (1963). The Townsend decision
was itself overruled by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992). The
Supreme Court recognized that Keeney was superseded by AEDPA. Shinn v.
Ramirez, ___ U.S. ___, 142 S. Ct. 1718, 1733-34 (2022).

p. 25.  This court has read the <u>Brown</u> opinion and finds nothing therein which supports excusing Mr. Neels' procedural default on claim 1.

Mr. Neels himself recognizes that "counsel does not have to raise every non-frivolous arguement [sic]."  Docket No. 30 at p. 28.  The claim described in ground 1 and expanded upon in Docket 30 at p. 24 is not an ineffective assistance of counsel claim.  It is a direct constitutional claim against the state court.  South Dakota requires that such claims be brought in the direct appeal.  <u>Ramos v. Weber</u>, 616 N.W.2d 88, 91-92 (S.D. 2000).  If such claims are not raised in a direct appeal and then the prisoner attempts to raise them in a state habeas petition, the claims are considered to be procedurally defaulted on *res judicata* grounds and the court will not consider them on the merits.  <u>Id.</u>

The rule discussed in <u>Ramos</u> predated that decision by at least two decades.  <u>See</u> <u>Miller v. State</u>, 338 N.W.2d 673, 675 (S.D. 1983).  And the rule has continued to be followed by the South Dakota Supreme Court after <u>Ramos</u>.  <u>See</u> <u>Piper v. Young</u>, 936 N.W.2d 793, 804-05 (S.D. 2019); <u>Legrand v. Weber</u>, 855 N.W.2d 121, 129 (S.D. 2014).  This court concludes the procedural default rule cited in <u>Ramos</u> was "firmly established" and "regularly followed."

When a state court has a procedural default rule whereby issues that could have been raised in the direct appeal and were not cannot later be heard in habeas proceedings, federal courts enforce that rule by refusing to reach the merits of the defaulted claim.  <u>Johnson v. Lee</u>, 578 U.S. 605, 606, 608-09, 612 (2016) (*per curiam*).  Here, even if Mr. Neels' habeas counsel would have asserted the medication claims in the amended petition, the state habeas court

26

would have refused to reach the merits of the claims and would have considered the claim procedurally defaulted. <u>Ramos</u>, 616 N.W.2d at 90-91. Accordingly, even if Mr. Neels can show "cause" because of some error of his habeas counsel, he cannot show "prejudice." These claims were never going to see the light of day, which is perhaps the exact reason habeas counsel deleted the trial claim from the amended state habeas petition.

Accordingly, the court recommends dismissing the claim contained in ground 1 of Mr. Neels' petition (as expanded in Docket 30 at p. 24) with prejudice because it is procedurally defaulted and he has not demonstrated cause and prejudice. <u>Armstrong v. Iowa</u>, 418 F.3d 924, 925, 927 (8th Cir. 2005); <u>Ogle v. Johnson</u>, 488 F.3d 1364, 1370 (11th Cir. 2007) (holding dismissal on the basis of procedural default is a dismissal with prejudice).

**D.    Whether Claim 2 is Procedurally Defaulted**

Respondent argues that Mr. Neels did not properly exhaust his claim set forth as ground 2 in his petition and that claim is now procedurally defaulted. Docket No. 25 at p. 17. Because Mr. Neels has not shown either (1) cause and prejudice or (2) a fundamental miscarriage of justice, respondent argues his default cannot be excused and this court must dismiss that claim with prejudice. <u>Id.</u>

Mr. Neels' second ground for relief is that his Sixth and Fourteenth Amendment rights were violated when his trial counsel provided ineffective assistance of counsel in four ways: (1) by inadequately investigating T.N.'s veracity, (2) by failing to prepare Mr. Neels for trial, (3) by refusing to allow

27

Mr. Neels to exercise his right to testify at trial, and (4) by failing to object to the prosecutor's improper remarks during opening statements (inviting the jury to put themselves in T.N.'s shoes). Docket No. 1 at pp. 7 & 17. The court discusses these subclaims separately in two groups.

### 1.    Standard Applicable to Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. Const. amend. VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " Strickland v. Washington, 466 U.S. 668, 698 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining "if counsel's assistance was so defective as to" violate a criminal defendant's Sixth Amendment rights and "require reversal of a conviction." Id. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the

defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quoting State v. Hall, 982 S.W.2d 675, 680 (Mo. 1998)). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)).

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. See Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). " 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition." Id. (quoting Strickland, 466 U.S. at 688).

The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered" the evidence presented and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009). In assessing the prejudice prong, courts

29

should consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding"—and "reweigh it against the evidence in aggravation." Id. at 40-41 (quoting Williams v. Taylor, 529 U.S. 362, 397-98 (2000)). It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of her case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44.

Finally, "[i]neffective assistance of counsel is a mixed question of law and fact and thus on habeas review, a federal court is not bound by a state court's conclusion that counsel was effective." Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003). However, " 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d).' " Id. (citing Strickland, 466 U.S. at 698). That is, "[a] state court's findings of fact are entitled to a presumption of correctness." Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002). Additionally, "[j]udicial scrutiny of counsel's performance must be highly deferential," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 698.

"The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is 'doubly' so." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal citations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)."

Id.  The inquiry when a <u>Strickland</u> claim is raised in a § 2254 petition is "whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard." <u>Id.</u>

As the state habeas court recognized, a claim of ineffective assistance of trial counsel requires Mr. Neels to show that his lawyers' representation of him fell below an objective standard of reasonableness and thereby prejudiced his case. <u>Skillicorn v. Luebbers</u>, 475 F.3d 965, 973 (8th Cir. 2007) (citing <u>Strickland</u>, 466 U.S. at 687).  In a petition under 28 U.S.C. § 2254, however, Mr. Neels must do more:  he must show that the state court "applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Skillicorn</u>, 475 F.3d at 973 (quoting <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002)).

### 2.    Inadequate Preparation of Mr. Neels, Denial of Right to Testify and Inadequate Investigation

The first three claims listed above which are contained in Mr. Neels' ground 2 of his petition (failure to prepare Mr. Neels for trial, failing to allow Mr. Neels to testify at trial, and inadequately investigating T.N.'s veracity) are procedurally defaulted.  These claims were not presented in Mr. Neels' direct appeal.  <u>See</u> Docket No. 23-3.  Two of these three allegations were included in Mr. Neels' initial *pro se* state habeas petition (<u>see</u> Docket No. 23-7 at pp. 4-5), but were abandoned in his subsequent amended petition.  <u>See</u> Docket No. 23-8 at p. 3.  Those were the claims that counsel did not adequately prepare Mr. Neels for trial and did not let him testify.  Docket No. 23-7 at pp. 4-5. Mr. Neels admits that the third claim—counsel inadequately investigated T.N.'s

veracity—was never presented at all in any fashion in any state court.  Docket No. 30 at p. 25.

None of these three claims were included in Mr. Neels' motion for a certificate of probable cause, nor in the state habeas court's grant of such a certificate.  <u>See</u> Docket Nos. 23-17 and 23-18.  Therefore, his claims that counsel inadequately prepared him for trial, denied him his right to testify, and inadequately investigated T.N.'s veracity were never presented to the state courts for decision or for review.

Just as with claim 1, Mr. Neels cannot go back to state court at this point and exhaust these claims because there are no nonfutile avenues for exhaustion.  He cannot reopen his direct appeal and he cannot file a second or successive habeas petition.  SDCL § 21-27-51.  So these claims are procedurally defaulted.  <u>Coleman</u>, 501 U.S. at 731-32, 735 n.1.  This court cannot reach the merits of these claims unless Mr. Neels satisfies the cause-and-prejudice standard or shows new evidence that he is actually innocent.  <u>Id.</u>

As to the inadequate preparation of Mr. Neels for trial and the alleged denial of his request to testify, Mr. Neels does not demonstrate cause and prejudice.  Nor does he establish a fundamental miscarriage of justice has occurred.  Docket No. 30 at pp. 25-26.

As to the third claim—that counsel inadequately investigated T.N.'s veracity—Mr. Neels claims to have new evidence.  <u>Id.</u>  He states his own father told Mr. Neels that T.N. made sexual advances toward him which he rejected.

32

Id. He also claims his mother received a letter from T.N. from which it can be inferred that T.N. falsified her allegations. Id. at p. 26.

The court interprets Mr. Neels' assertions to be an attempt to satisfy the actual innocence exception to procedural default. No affidavit from Mr. Neels' mother or father has been produced for the court. The alleged letter from T.N. has also not been produced. Mr. Neels filed his own affidavit in which he simply repeats these bald assertions. Docket Nos. 31 and 31-1. Mr. Neels supplies no dates as to when these events occurred or when he learned of them. Docket Nos. 30, 31 & 31-1. No affidavits from trial counsel were provided to this court.

"Actual innocence," the only example of "miscarriage of justice" so far recognized by the Supreme Court. Sawyer v. Whitley, 505 U.S. 333, 339 (1992). It is not an independent constitutional claim upon which habeas relief can be granted — instead, it is "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." Schlup v. Delo, 513 U.S. 298, 315 (1995). Actual innocence means factual innocence, it does not mean mere legal insufficiency. Bousley, 523 U.S. at 623. Actual innocence claims are rarely successful as they require the petitioner to carry an exacting burden. Schlup, 513 U.S. at 324.

Actual innocence can be a gateway to excuse "severely confined categor[ies] of cases" involving procedural defaults: expiration of the statute of limitations, successive petitions (reasserting claims previously asserted in an

earlier petition), abusive petitions (asserting claims that could have been but were not asserted in an earlier petition), failure to raise a constitutional claim on direct appeal, failure to develop facts in state court, and failure to observe state procedural rules, including filing deadlines. McQuiggin v. Perkins, 569 U.S. 383, 386, 392-93, 395 (2013).

In order to show actual innocence, Mr. Neels must (1) produce "new reliable evidence" not presented previously; and (2) he must "show that, in light of all the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crime for which he pleaded guilty and was convicted." Schlup, 513 U.S. at 324; United States v. Apker, 174 F.3d 934, 938-39 (8th Cir. 1999).

Evidence is "new" only if it was unavailable at the time of trial and if it could not have been discovered earlier through the exercise of due diligence. Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999). A petitioner can make the new evidence showing only where he demonstrates that the factual basis for the evidence did not exist at the time of the trial and could not have been presented earlier. Id. The evidence must not only be "new" but it must also be "reliable." Schlup, 513 U.S. at 324.

The court concludes that Mr. Neels has not met this exacting standard. First, the evidence is not "new" in that it could easily have been discovered by Mr. Neels at the time of trial, at the time of his direct appeal, and at the time he filed his state habeas petition. The witnesses are his own mother and father. He gives no explanation as to why he could not or did not talk to his parents

34

about T.N.'s allegations. There is no showing by Mr. Neels that, had he exercised due diligence, he could not have discovered the evidence at any one of these earlier times. Furthermore, because Mr. Neels does not state when his parents made these disclosures to him, it is entirely possible that Mr. Neels *did* know of the evidence at the time of his trial. The evidence is not new and does not satisfy Mr. Neels' burden to show new and reliable evidence of his factual innocence. Schlup, 513 U.S. at 324; Norris, 170 F.3d at 818. The court finds Mr. Neels has not demonstrated actual innocence to excuse his procedural default as to the failure to investigate T.N.'s veracity.

Mr. Neels asserts numerous times throughout his brief in opposition that he never sexually abused T.N. and never confessed to doing so. See, e.g., Docket No. 30 at p. 30 (stating, "Neels has never had a sexual relationship with T.N. nor has he ever admitted to one."); Docket No. 31-1 at p. 1, ¶ 37 (same). This is simply a bald-faced denial of the video recorded interview Mr. Neels gave with Sergeant Walsh where he admitted sexually abusing T.N. on multiple occasions. If Mr. Neels wished to disavow his confession, he certainly knew he could do so at his trial. This post-trial disavowment is not new and reliable evidence of his innocence. United States v. Wooldridge, No. 4:97-CR-400130HFB-MEF, 2015 WL 9068730, at *7 (W.D. Ark. Sept. 28, 2015) (holding that a petitioner's bare assertion of innocence is not new and reliable evidence of innocence). Furthermore, a claim that one's confession was coerced represents a claim of "legal innocence" whereas Schlup requires proof of "actual innocence." Id. A claim of actual innocence cannot be premised solely on the

assertion that one's confession was coerced. <u>Nolan v. Armontrout</u>, 973 F.2d 615, 617 (8th Cir. 1992).

Mr. Neels also asserts that he had trucking logs which contradicted T.N.'s testimony about the times and dates of events. He told Sergeant Walsh about these logs during his interview with him on October 24, 2014. This evidence is also not new as Mr. Neels knew about it at least since 2014.

This court recommends dismissal with prejudice of the three allegations of ineffective assistance of counsel raised in ground 2 of Mr. Neels' § 2254 petition addressed in this subsection. They are procedurally defaulted and Mr. Neels has not carried his burden to show cause and prejudice or actual innocence.

### 3. Failure of Counsel to Object to Prosecutor's Improper Remarks in Opening Statements

#### a. This Sub-claim is Not Procedurally Defaulted

Respondent argues Mr. Neels' assertion that counsel was ineffective for failing to object to the prosecutor's improper remarks in opening statements is also procedurally defaulted. Docket No. 25 at pp. 24-25. Although Mr. Neels presented this claim to the state courts in habeas proceedings, respondent asserts those courts refused to reach the merits of the claim based on adequate and independent state grounds—the state's *res judicata* rule. <u>Id.</u> Because the state habeas court ruled that Mr. Neels' claim was barred by a procedural rule, respondent asserts that this court is prohibited from hearing the merits of the claim. <u>Id.</u>

Mr. Neels asserts he properly exhausted this claim in state court. Docket No. 30 at p. 26. He further asserts that the issue of whether he was prejudiced by counsel's deficient performance has never been litigated or decided. Id. He asks the court to consider his claim on the merits. Id.

First, the court clarifies the state court record. In his direct appeal, Mr. Neels presented a claim that the prosecutor's remarks deprived him of a fair trial. Docket No. 23-3 at pp. 5, 22-28. Because his lawyers did not contemporaneously object to the prosecutor's remarks during the trial, the state supreme court reviewed this issue for plain error, which required Mr. Neels to show at least that an error had occurred and that he was prejudiced thereby. Neels, 969 N.W.2d at 731, 736.

When Mr. Neels presented his habeas claim, he no longer presented the same fair trial claim as he had in his direct appeal. Instead, he asserted an ineffective assistance of counsel claim premised on his Sixth Amendment right to counsel. Docket No. 23-8 at p. 3. He argued that *his trial counsel's failure to object* to the prosecutor's remarks in opening statement deprived him of effective assistance of counsel. Id.

Finally, the state habeas court and the state supreme court did not deny Mr. Neels' ineffective assistance of counsel claim because he failed to raise the claim on direct appeal. Claims of ineffective assistance of counsel are almost never cognizable in a direct appeal in South Dakota state courts. State v. Chipps, 874 N.W.2d 475, 481-82 (S.D. 2016). Because Mr. Neels could not have raised this claim in his direct appeal, he was required to wait until his

habeas proceedings to raise it.  Id.  Therefore, he could not be faulted—it was not a procedural default—to have failed to raise the claim in the direct appeal.

Instead, the state courts refused to hear the merits of Mr. Neels' ineffective assistance claim *because one element of that claim was the same as one element of his direct appeal claim*.  The state courts reasoned that the prejudice Mr. Neels would have had to have shown to succeed on plain-error review of his fair trial claim was the same prejudice Mr. Neels would have to show under Strickland.  Neels, 969 N.W.2d at 736.  Therefore, since the supreme court had presumably[8] found no prejudice when presented with the fair trial claim in the direct appeal, the courts held Mr. Neels should not be given a "second bite at the apple" by being permitted to litigate the issue of Strickland prejudice in the habeas proceedings because both showings of prejudice were identical.  Id. at 737-38.

The upshot of the South Dakota Supreme Court's rule in Neels is this:  if a defense lawyer provides constitutionally ineffective assistance at trial by failing to object or otherwise preserve an issue for appeal, and if the defendant raises that error as a claim for relief in his direct appeal, that error by trial counsel can never again be the basis for an ineffective assistance of counsel claim in a subsequent habeas action.  That is because if the error is raised on direct appeal, by its very nature it will be reviewed under the plain-error standard—by definition, counsel did not object or otherwise preserve the issue

---

[8] One must "presume" what the South Dakota Supreme Court found or failed to find because they did not issue a reasoned opinion in Mr. Neels' direct appeal, but rather issued a two-sentence summary affirmance.

for appeal. Such errors are reviewed under the plain-error standard which will always require a showing of prejudice. Neels, 969 N.W.2d at p. 736. If litigating the issue of plain-error-prejudice on direct appeal precludes relitigating the issue in a habeas proceeding as Strickland prejudice, such errors will never receive a full and complete public hearing. One will never know why counsel failed to perform at constitutionally adequate levels.

The South Dakota Supreme Court pointed out that its holding did not preclude *all* later litigation of ineffective claims in a habeas proceeding. Neels, 969 N.W.2d at 736. The court noted there may be instances where plain-error-review results in affirmance of the conviction for some reason other than a failure by the defendant to show prejudice. Id. However, even the Neels court noted this would be a "rare" set of circumstances. Id.

The procedural default rule in federal court precludes federal courts from reaching the merits of defaulted claims if the procedural rule relied on by the state courts is "independent of the federal question and adequate to support the judgment." Walker v. Martin, 562 U.S. 307, 315 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 60-61 (2009)). The state rule may be a substantive rule or "a procedural barrier to adjudication of the claim on the merits." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977)).

A state procedural rule is "adequate" if it is "firmly established and regularly followed." Beard, 558 U.S. at 60-61 (quoting Lee, 534 U.S. 362, 376 (2002)). A state ground may be "inadequate" when it imposes "novel and unforeseeable requirements without fair or substantial support in prior state

39

law." Walker, 562 U.S. at 320.  The question whether a state procedural rule is "adequate" is a federal question.  Id. at 60 (citing Lee, 534 U.S. at 375).

In Lee, the rules at issue in the underlying state court decision were not new, but the court's application of those rules to the facts of Lee's case was novel.  Lee, 534 U.S. at 382.  There was no published state court decision up to the time Lee's case was presented holding that the rules should be applied as they were in Lee's case.  Id.  Furthermore, Lee showed diligence in trying to comply with the rules.  Id. at 384-85.  For these reasons, the Court held the federal habeas court could reach the merits of Lee's claim.  Id. at 387.  See also Oxford v. Delo, 59 F.3d 741, 744-45 (8th Cir. 1995) (stating that "[f]ederal review [of a state prisoner's habeas claim] is not barred where a state procedural rule is inconsistently enforced or the state court undertakes a novel application of the rule.").

The rule announced in Mr. Neels' habeas appeal was a new and novel application of a previously-recognized doctrine under South Dakota law.  The South Dakota courts have long recognized the principle that a habeas petitioner cannot re-present a claim in his habeas petition that was previously presented in his direct appeal and denied.  Neels, 969 N.W.2d at 733 (citing Lodermeier v. Class, 555 N.W.2d 618, 626 (S.D. 1996)).  This is simply an application of that aspect of the *res judicata* doctrine that holds a party may not reassert an issue "that was actually litigated . . . in a prior action."  Id.

However, until Mr. Neels' habeas appeal, the "Court ha[d] not before examined the interplay between the required showing of prejudice under

40

Strickland and that which must be shown under plain error review." Id. at 735. The decision reached by the South Dakota Supreme Court in Mr. Neels' habeas appeal was, therefore, a novel issue of first impression for that court. Id. at 735. The issue of Strickland prejudice had not actually been litigated in a prior action in Mr. Neels' case. Instead, the novel issue presented to the court was whether litigation of plain-error-prejudice should preclude later litigation of a claim of Strickland prejudice. Id.

This court concludes that the application of *res judicata* to Mr. Neels' habeas petition was a novel application of South Dakota law. Id. at 735. As such, this court finds as a matter of federal law that the rule announced in Neels was not "adequate" under existing federal case law as of the time the Neels habeas opinion was issued. Accordingly, the court's decision in Mr. Neels' habeas action does not bar this court's review of the merits of Mr. Neels' claim that his trial counsel was ineffective for failing to object to the prosecutor's remarks in opening statements at his trial. Walker, 562 U.S. at 320; Lee, 534 U.S. at 387; Oxford, 59 F.3d at 744-45.

### b.    **Mr. Neels' Ineffective Assistance Claim Fails on the Merits**

Respondent never addresses the merits of this claim asserted in ground 2 of Mr. Neels' habeas petition. There is no reasoned state court opinion addressing the merits of the issue because the state courts avoided the issue on procedural grounds which were not "adequate." Accordingly, this court applies the familiar Strickland test enunciated above by analyzing (1) whether counsel's conduct was deficient and (2) whether Mr. Neels was prejudiced

41

thereby. <u>Strickland</u>, 466 U.S. at 687. In analyzing this claim, which is not procedurally defaulted, this court's review is limited to the evidence in the state court record. <u>Shinn v. Ramirez</u>, ___ U.S. ___, 142 S. Ct. 1718, 1732 (2022).

Regarding deficient performance, a "golden rule" argument which asks jurors to place themselves in the position of a party or victim "is universally condemned because it encourages the jury to 'depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.' " <u>United States v. Palma</u>, 473 F.3d 899, 902 (8th Cir. 2007) (quoting <u>Lovett v. Union Pac. R.R. Co.</u>, 201 F.3d 1074, 1083 (8th Cir. 2000) (quoting <u>Spray-Rite Serv. Corp. v. Monsanto Co.</u>, 684 F.2d 1226, 1246 (7th Cir. 1982))). When a prosecutor tells jurors to imagine themselves as victims of a defendant's crime, the prosecutor violates the "golden rule." <u>Id.</u> It follows that, similar to what occurred during closing arguments in Mr. Neels' case, an objection to this line of argument by the prosecutor in opening statements would have been sustained. The statement by the prosecutor violated one of the few inviolable black-letter rules of evidence. <u>Id.</u>

Still, <u>Strickland</u> requires this court to presume that decisions by Mr. Neels' trial counsel were sound trial strategy. <u>Hall</u>, 296 F.3d at 692. It is hard to see what trial strategy would have been furthered in Mr. Neels' case by failing to object to the prosecutor's "golden rule" argument. Nevertheles, even if the court assumes that trial counsel's failure to object was deficient performance, this court concludes that Mr. Neels has not demonstrated prejudice.

42

Here, the evidence at trial was overwhelming. T.N.'s testimony bears the ring of truth in that it was rich in detail. Although this court has not set forth all the details of that testimony for decency's sake, T.N. recalled the place and season of the events, her own age, what clothing she was wearing at the time, what clothing was removed and by whom, as well as explanations, rationales, and pet names given by Mr. Neels during the events.

In addition, although Monica did not know about the abuse contemporaneously with when it happened, her testimony corroborated T.N.'s testimony. Monica testified that for the last 15 years of her marriage, her sex life with Mr. Neels was nonexistant, and that period of celibacy coincided with the time period Mr. Neels began abusing T.N. Monica testified Mr. Neels was controlling of T.N., isolating her from friends, fly-specking what clothing she wore, and insisting on knowing where she went, with whom, for how long, and, if she was with a boy, whether there was any possibility a boy could "have his way with" T.N. while they were together. Monica testified Mr. Neels did not exhibit this behavior with their other two daughters.

Monica testified Mr. Neels regularly took T.N. with him on trucking trips in his semi-truck and did not do the same with the other two daughters. Monica testified that the family's dining room table inexplicable collapsed and that the corner of the bathroom vanity broke, which corresponded to events of abuse described by T.N. Finally, when T.N. became old enough to start dating, Monica testified that the relationship between T.N. and Mr. Neels became explosive, with Mr. Neels perpetrating actual physical violence against T.N. or

43

threatening the same on multiple occasions.  Monica witnesses one of these
events first-hand when Mr. Neels had T.N.'s head between his hands and
squeezed it, threatening to kill both T.N. and her boyfriend.  On another
occasion, Monica observed a hole appear in a wall on the first floor of her
house at head-level at a time when T.N. had just been home to visit.

Even Mr. Neels corroborated T.N.'s testimony.  In his interview with
Sergeant Walsh, Mr. Neels admitted to sexually abusing T.N., though he
asserted T.N. was older than the ages T.N. testified to.  One incident in
particular was described nearly identically by both T.N. and Mr. Neels.  T.N.
testified when she was 10 or 11 and she had grown pubic hair, Mr. Neels had
her remove her shorts and underwear and groomed her pubic hair, explaining
that she needed to keep this area groomed and trim the hair short.  After
cutting her pubic hair, T.N. testified Mr. Neels performed oral sex on her.

When Sergeant Walsh interviewed Mr. Neels, unprompted, Mr. Neels
described virtually the identical details that T.N. had disclosed.  Video at
2:02:13 to 2:03:38.  The only difference was Mr. Neels estimated T.N. was
approximately 14 or 15 years old at the time of the event, while T.N. said it
happened at age 10 or 11.

The defense at trial was to attempt to discredit T.N., but very little of this
evidence hit home.  Mr. Neels had confessed to several instances of abusing
T.N. over a 10-year period.  The only witness called by the defense at trial
basically confirmed that T.N. said the abuse had occurred, but asserted that

T.N. originally stated the abuse began when she was age 14 instead of age 9 or 10.

The error of trial counsel in failing to object to the "golden rule" argument in opening statements is but a grain of sand when compared to the vast beach of evidence of guilt offered at Mr. Neels' trial. This court concludes that, even if trial counsel were deficient, Mr. Neels has failed to demonstrate prejudice under Strickland.

Nor has Mr. Neels demonstrated grounds for the holding of an evidentiary hearing on this subissue, even though trial counsel have never explained in any proceeding what their reasons were for failing to object. The Supreme Court recently reiterated that a federal evidentiary hearing on a § 2254 petition is very tightly circumscribed. Shinn, 142 S. Ct. at 1735-36. A federal court may only grant an evidentiary hearing under § 2254 where the petitioner failed to develop the factual basis of the claim in state court if: (1) the claim relies on a new rule of constitutional law made retroactive to cases on collateral review or (2) the factual predicate for the claim could not have been previously discovered through the exercise of due diligence. Id. at 1736 (citing 28 U.S.C. § 2254(e)(2)(A)).

Here, Mr. Neels does not base his claim on a new rule of constitutional law. Nor has he demonstrated that he is relying on new facts that could not have been previously discovered through the exercise of due diligence—these facts were known at least as early as the time Mr. Neels raised this issue in his direct appeal. Because Mr. Neels has not demonstrated either circumstance

outlined in § 2254(e)(2)(A), this court cannot hold an evidentiary hearing and expand upon the state court record. Id. at 1735. Accordingly, this court recommends this subclaim be denied on the merits and respondent's motion for judgment on the pleadings be granted.

**E.    Whether Ground 3 Merits Habeas Relief**

In ground 3, Mr. Neels does not assert an ineffective assistance of counsel claim. Rather, he reasserts the same claim he presented in his direct appeal: did the trial court itself err by not properly instructing the jury as to unanimity? Docket No. 1 at pp. 8 & 18. This claim was properly exhausted because it was presented to the state appellate court, as respondent concedes. O'Sullivan, 526 U.S. at 845; Docket No. 25 at pp. 21-22. Therefore, the court considers the merits of the claim contained in Mr. Neels' ground 3.

The issue presented to this court is whether the state court's decisions on this issue were an unreasonable application of federal law and whether the state court's findings of fact enjoy support in the record. 28 U.S.C. §§ 2254(d)-2254(e). When the last state court decision on the merits lacks any reasons for the decision—as the South Dakota Supreme Court opinion on direct appeal does not—federal courts are to "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The federal court may then presume (subject to rebuttal by the state), that the latter courts adopted the same reasoning as the prior court. Id.

46

Here, there is **no state court record** on this issue.  Trial counsel did not raise the issue at Mr. Neels' trial, so the issue was not discussed by the state trial court.  The supreme court issued a summary affirmance on direct appeal that contains no law or explanation of its resolution of this claim.  And both habeas courts disposed of the related ineffective assistance of counsel issue on procedural grounds.  Therefore, all this court can do is set forth the federal law and determine whether the *result* reached by the state courts is compatible with what the law dictates.

### 1.    Federal Law of Duplicity

"Duplicity is the joining in a single count of two or more distinct and separate offenses."  United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995) (quoting Gerberding v. United States, 471 F.2d 55, 59 (8th Cir. 1973)).  The main concern with duplicity "is that a general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the other, or guilty of all."  Gerberding, 471 F.2d at 59.  The Sixth Amendment guaranty of a jury trial in serious criminal cases requires unanimity among the jurors before a conviction may be had.  Ramos v. Louisiana, ___ U.S. ___, 140 S. Ct. 1390, 1396-97 (2020).  The Sixth Amendment is incorporated against the states through the Fourteenth Amendment.  Id. at 1394, 1397.

A duplicitous indictment imperils a defendant's right to a unanimous jury verdict because, unless special interrogatories are given to the jury or the prosecutor limits its evidence to a single event for a single count, there

47

is a risk that the jury fractured about what conduct was proven and what conduct satisfied the elements of the offense charged.  United States v. Pietrantonio, 637 F.3d 865, 869 (8th Cir. 2011).

If the statute the defendant is charged with violating "enumerates one or more ways of committing a single offense," then the indictment can permissibly list "all of the different ways of committing that same offense" conjunctively.  United States v. Moore, 184 F.3d 790, 793 (8th Cir. 1999). In such a case, "proof of any one of the enumerated methods will sustain a conviction."  Id.  For example, where a statute criminalizes the distribution of controlled substances, an indictment can permissibly allege the defendant distributed both marijuana and methamphetamine without rendering the indictment duplicitous.  Id.

But where a defendant was required to register as a sex offender at each location where he lived and he failed to timely register in both Nevada and Massachusetts, the single-count indictment charging him with one offense of failing to register was duplicitous.  Pietrantonio, 637 F.3d at 869-70.  Some jurors may have found the defendant failed to register in Nevada while other jurors may have rejected that assertion but found the defendant failed to register in Massachusetts.  Thus, the defendant could have been convicted by a jury that was not unanimous as to which event the government proved beyond a reasonable doubt.

The possibility of a nonunanimous jury verdict on a duplicitous indictment can be solved by proper jury instructions that require the jury to

48

make separate findings regarding what acts they believe the defendant committed in support of the jury's guilty verdict as to the duplicitous count(s).  United States v. Paul, 885 F.3d 1099, 1105 (8th Cir. 2018).

### 2.    Mr. Neels' Indictment Was Duplicitous

In Mr. Neels' case, before trial counts 1 and 2 alleging first-degree rape were dismissed and the remaining 14 counts were renumbered (according to respondent).  CR at p. 77 (JT Day 2 at pp. 8-9).  This was apparently done only orally as this court has not found evidence of a 14-count written indictment in the state court record.  The only superseding indictment in the record, filed on November 26, 2014, contains the original 16 counts.  CR pp. 27-31.  The court examines that document, counts 3 through 16, which for ease of reference (because respondent refers to them that way), the court will refer to as counts 1 through 14.

Mr. Neels does not specify which counts in the indictment he asserts were duplicitous and thus required a special jury instruction as to unanimity.  See Docket No. 1 at pp. 8 & 18.  The court assumes he is asserting the same argument his appellate counsel asserted in the direct appeal.  See Docket No. 23-3 at pp. 13-20 (Appellant's Brief at pp. 10-17).

Appellate counsel noted that counts 5 and 6 both charged third-degree rape and both counts were identical.  Id.  The counts alleged Mr. Neels had accomplished an act of sexual penetration with T.N. between the dates of October 18, 2001, and June 30, 2005, at a time when T.N. was at least ten years old but less than 16, and Mr. Neels was at least three

49

years older than her.  CR at p. 29.  Given T.N.'s date of birth, both counts 5

and 6 alleged acts of sexual penetration by Mr. Neels when T.N. was

between the ages of 10 and 13.

Counts 7 and 8 were similarly identical, alleging third-degree rape

between the dates of July 1, 2005, and October 17, 2007, or when T.N. was

between the ages of 13 and 15.  Id.  Counts 9 and 10 were also identical,

alleging third-degree rape between the dates of October 18, 2005, and June

30, 2005, or when T.N. was between the ages of 10 and 13.  Id. at

pp. 29-30.

Counts 11 and 12 were identical, alleging aggravated incest with a

victim less than 18 years of age by Mr. Neels when T.N. was between the

ages of 16 and 17 years of age.  Id. at p. 30.  Counts 13 and 14 were

identical, alleging mutually consensual incest between T.N. and Mr. Neels

between the dates of October 18, 2007, and April 24, 2014, when T.N. was

between the ages of 18 and 22 years old.  Id. at pp. 30-31.

Third-degree rape in violation of SDCL § 22-22-1(5), as charged in

counts 5-8, contains the following essential elements:  (1) an act of

penetration where (2) the victim is ten years of age, but less than sixteen

years of age, and (3) the perpetrator is at least three years older than the

victim.  SDCL § 22-22-1(5)[9]; State v. Darby, 556 N.W.2d 311, 317 (S.D.

1996).

---

[9] The South Dakota legislature revised § 22-22-1 in 2005 and 2012.  The
indictment charged Mr. Neels under the earlier version of the statute which, at

Counts 9 and 10 also charged third-degree rape, but referenced SDCL § 22-22-1(7).  The elements of the crime charged in counts 9 and 10 are: (1) an act of sexual penetration when (2) the victim is ten years of age but less than eighteen years of age and (3) the victim is the child of a spouse or former spouse of the perpetrator.  SDCL § 22-22-1(7).

Under South Dakota law, sexual penetration is defined as "an act, however slight, of sexual intercourse, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the body or of any object into the genital or anal openings of another persons's body."  SDCL § 22-22-2.

Aggravated incest, in violation of SDCL § 22-22A-3, as charged in counts 11 and 12, requires the proof of the following essential elements: (1) sexual penetration (2) of a person who is less than 18 years old, and (3) is the child of the perpetrator of the child of the perpetrator's spouse or former spouse.  SDCL § 22-22A-3.

As can be inferred from the above definition of "sexual penetration," there are many ways to have violated both §§ 22-22-1(5) and (7) and 22-22A-3:  a perpetrator could engage in oral, anal, or vaginal sex with a victim or rape a victim with an object.  But the indictment did not, as in Moore cited above, set forth the various ways the prosecution believed Mr. Neels had violated the statute.  No specific acts were alleged in any of

---

the time, contained seven subsections.  The current version of the statute contains only five subsections.

the above counts of the indictment—only the generic term "sexual penetration."  Id. at pp. 27-31.

But at trial, numerous factual incidents were described by T.N.  For example, between the ages of 10 and 13, T.N. described at least four separate events of sexual penetration with Mr. Neels, some involving oral penetration, some involving digital genital penetration, and some involving vaginal intercourse.  See CR at pp. 1047-48, 1051-57, 1066-69, 1083-85 (JT Day 2 at pp. 30-31, 34-40, 48, 50-52, 66-68); CR at p. 607 (JT Day 3 at p. 15).  In closing arguments, the prosecutor urged the jury to use any and all of these events testified to by T.N. to satisfy the elements of the various charges without distinction.  CR pp. 553-58 (JT Day 4 at pp. 66-72).  Any of these four events could have formed the basis for a conviction on counts 5, 6, 7, 8, 9 or 10.  Did the jury believe all of those events took place?  Did some jurors believe in some of those events while other jurors believed other events happened, but not the same events?  There is no way to tell from the jury verdict.

Under similar circumstances, the South Dakota Supreme Court held a defendant's indictment was duplicitous.  See State v. Muhm, 775 N.W.2d 508 (S.D. 2009).  In that case, Muhm went to trial on a five-count indictment that charged Muhm with multiple violations of three statutes involving sexual molestation of two child victims.  Id. at 512, 514-15.  The indictment was generic in that it did not—similar to Neels' indictment— specify specific acts for specific counts.  Id. at 512, 514.  The victims then

testified generally about a host of different incidents.  Id.  The court agreed with Muhm that the five-count indictment presented to the jury was duplicitous.  Id. at 514, 520 (stating that "the surviving [five] counts were duplicitous.").  The court noted that the problem of jury nonunanimity stemming from a duplicitous indictment like Muhm's which charged "single act" offense was significant.  Id. at 517.  Muhm was charged with rape under SDCL § 22-22-1, sexual contact under SDCL § 22-22-7, and criminal pedophilia under SDCL § 22-22-30.1.  Id. at 517 n.5

The court held that the state can cure the problem of nonunanimity by electing a single offense on which it relies for a single charge in the indictment.  Id. at 518-19.  Alternatively, the court may cure the problem by instructing the jury that it must be unanimous with respect to the conduct they find supports a guilty verdict on each count.  Id.  Neither was done in Muhm's case, but because no contemporaneous objection was made by defense counsel at trial, the appellate court reviewed the matter under the harmless error standard.[10]  Id. at 520.  In Muhm's case, he raised no alibi defense and the only defense at trial was the victims' credibility.  Id. at 521. Under the record presented in Muhm's case, the court concluded the submission of the duplicitous indictment to the jury at trial was harmless error.  Id.

---

[10] Muhm had, however, raised the duplicity issue in a pretrial motion, which resulted in the prosecution voluntarily reducing the counts in the indictment from 37 to 5.  Muhm, 775 N.W.2d at 512.

### 3. Is the State Supreme Court's Harmless Error Conclusion Contrary to, or an Unreasonable Application of, Federal Law?

This court reiterates its duty:  (1) to determine whether the South Dakota Supreme Court's decision that the duplicitous indictment in Mr. Neels' case was not plain error is contrary to, or an unreasonable application of federal law; and (2) to determine whether the appellate court's factual findings enjoy fair support in the record.  See 28 U.S.C. § 2254(d)(1) and (2).

The Supreme Court has held subsection (d)(1) of § 2254 requires a showing that the state court decision contravenes or unreasonably applies "clearly established Federal law, as determined by the Supreme Court;" it is insufficient if the petitioner merely shows the state court decision "offends lower federal court precedents" or *dicta* in a Supreme Court opinion.  Brown v. Davenport, ___ U.S. ___, 142 S. Ct. 1510, 1525 (2022).  Federal habeas courts must compare the state court decision to those Supreme Court precedents that existed at the time of the state court decision.  Id.  As to subsection (d)(2) of § 2254, federal courts may overturn a state court's factual findings only if "*every* fairminded jurist would agree that an error was prejudicial."  Id. (emphasis in original).

Relying on Muhm, which respondent asserts would have been controlling precedent in Mr. Neels' direct appeal, respondent argues that the result in Muhm and the result in Mr. Neels' case are consistent with federal

law analyzing duplicity claims where the issue was not preserved in the court below.

When a state court decides that a constitutional violation is harmless, § 2254 does not allow a federal habeas court to grant habeas relief unless the state court's harmlessness determination was itself unreasonable. Fry v. Pliler, 551 U.S. 112, 119 (2007) (citing Mitchell v. Esparza, 540 U.S. 12 (2003) (per curiam)). But the Supreme Court in Brecht (which predated AEDPA), required a more stringent showing than § 2254: a federal habeas court may not overturn a state court's conclusion that a constitutional violation was harmless unless the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 631 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

The Brecht standard, which the Court held survived the enactment of AEDPA, requires a state prisoner to show "actual prejudice" in seeking federal habeas relief. Fry, 551 U.S. at 119-20 (holding that the Ninth Circuit correctly applied the Brecht test post-AEDPA in determining whether a constitutional error at a state court criminal trial was prejudicial). Under Brecht, "[t]here must be more than a 'reasonable possibility' that the error was harmful." Davis v. Ayala, 576 U.S. 257, 268 (2015) (quoting Brecht, 507 U.S. at 637). The federal habeas court may not grant relief "based on mere speculation that the defendant was prejudiced" by the constitutional error; "the court must find that the defendant was actually prejudiced by

the error." Id. (quoting Calderon v. Coleman, 525 U.S. 141, 146 (1998) (*per curiam*)).

In sum, Mr. Neels "must show that the state court's decision to reject his [constitutional] claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " Id. at 269-70 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).  Or, as the Supreme Court held recently:  a state "prisoner must demonstrate that, under this Court's precedents, no 'fairminded juris[t] could have reached the same judgment as the state court.' " Shinn, 142 S. Ct. at 1732 (quoting Harrington, 562 U.S. at 102).

Here, Mr. Neels is attacking the jury instructions the trial court gave or, more precisely, the instruction(s) that were not given.  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  "The question in a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' . . . not merely whether 'the instruction is undesirable, erroneous, or even 'universally condemned.' " Id. (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973)).  See also Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (stating that defendants seeking to show a constitutional violation as

56

a result of erroneous jury instruction bear an "especially heavy" burden).  In

determining the prejudicial effect of erroneous jury instructions, the federal

habeas court must evaluate the instructions as a whole and the trial

record.  Id.

Here, the question of whether the jury was properly instructed is a

question of law, as is the question whether an improper jury instruction

constituted plain error.  Accordingly, the state court's decision represents a

decision of law, not fact.  Therefore, this court applies the Brecht test to

evaluate whether the South Dakota Supreme Court's determination that a

duplicitous indictment and lack of correcting jury instructions was

harmless error was an unreasonable application of federal law.

The court begins with the jury instructions the court *did* give.  The

trial court instructed the jury that Mr. Neels was presumed innocent unless

the jury found that the state had proved his guilt beyond a reasonable

doubt.  Docket No. 23-23 at p. 1.  The jury was told that each count charged

a separate offense and that the jury must consider each count and the

evidence applicable to that count separately.  Id. at p. 3.  The jury was

instructed that a guilty verdict on one count must not control or influence

the jury's verdict on any other count.  Id.  Finally, the trial court instructed

the jurors that all jurors must agree before returning a verdict.  Id.

While not sufficient to cure the duplicity problem identified by

Mr. Neels, these instructions certainly put the jury on notice that each

57

count was to be considered separately and that the jury's verdict must be unanimous as to each count.  Id. at pp. 1-4.

This court concludes that Mr. Neels has not shown actual prejudice. The evidence at trial was overwhelming, including Mr. Neels' own confession.  The richness of detail testified to by T.N. carried with it the ring of truth.  Many of her details were corroborated by Mr. Neels himself or by her mother, Monica.  For example, though Monica did not know of the abuse at the time it was happening, she confirmed that T.N.'s demeanor changed at about age nine, that Mr. Neels treated T.N. differently than their other daughters, and that Mr. Neels admitted to Monica that he was having T.N. help him shower after his first back surgery.  Monica also confirmed that the dining room table inexplicably collapsed, that the corner of the bathroom vanity inexplicably broke, and that Mr. Neels had physically menaced T.N. including squeezing her head between his hands, verbally threatening to kill T.N. and her boyfriend, and punching a hole in a door at eye level.  The only evidence offered in defense was that T.N. might have been 14 when the abuse began instead of age 10 or 11 as she had described in her testimony.[11]

---

[11] In this federal habeas proceeding, Mr. Neels asserts that his trucking logs would have provided an alibi defense.  The court rejects the assertion that the logs would have provided an alibi for all of T.N.'s allegations spanning 10 years. Some of those allegations occurred *in Mr. Neels' truck*, so the trucking logs would not have negated those allegations.  Furthermore, Mr. Neel's *post hoc* assertion of alibi contradicts his own confession in which he unwittingly and without any prompting gave many details that were identical to the details provided by T.N.

Based on the overwhelming evidence of Mr. Neels' guilt adduced at trial, this court concludes that Mr. Neels has not shown actual prejudice. It follows, then, that the state supreme court's conclusion on direct appeal that Mr. Neels had not shown plain error (which requires a showing of prejudice), was not itself an unreasonable decision. The court recommends granting respondent's motion for judgment on the pleadings as to the claim articulated by Mr. Neels as ground three of his § 2254 petition.

**F.      Whether Ground 4 is Cognizable in a Federal Habeas Petition**

Habeas relief under § 2254 is available only for violations of federal constitutional rights, federal statutes, and federal treaties. See 28 U.S.C. § 2254(a). Claims that are premised on violations of state laws alone are not cognizable in federal habeas practice. Stewart v. Nix, 972 F.2d 967, 970 (8th Cir. 1992) ("Errors of state law do not provide a basis for federal habeas corpus relief."). Respondent asserts that Mr. Neels' claim number four, which alleges the state courts erred in determining that *res judicata* precluded his habeas claims, is premised on state law alone.

The court agrees. In his petition, Mr. Neels does not identify any federal constitutional provision, federal statute, or federal treaty he alleges was violated by the state courts' *res judicata* decision. As is clear from the state supreme court's decision, that *res judicata* decision was based on state law, not federal law. Neels, 969 N.W.2d at 733-38. The Neels court examined the federal law defining prejudice under Strickland, but applied the state law of *res judicata* to determine if Mr. Neels should be allowed to "relitigate" prejudice in a

59

habeas proceeding.  Id.  The state court's decision was premised on state law. Id.  Mr. Neels identifies no federal law violation.  Accordingly, this claim is not cognizable in a federal habeas petition.  This court recommends ground 4 be dismissed with prejudice and judgment on the pleadings be granted to respondent.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting respondent's motion to dismiss [Docket No. 22] and dismissing the entirety of Mr. Neels' § 2254 petition with prejudice and without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific to require de novo review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED August 22, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge